Filed 6/4/25  P. v. Garcia CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C101102 |
| Plaintiff and Respondent, | (Super. Ct. No. 62190146) |
| v. | |
| PASCUAL GARCIA, | |
| Defendant and Appellant. | |

This case arises out of an alcohol-fueled bar fight.  A jury found defendant Pascual Garcia guilty of assault with a deadly weapon (knife).  (Pen. Code, § 245, subd. (a)(1).)[1] In a bifurcated proceeding, the trial court found defendant had three prior serious or violent felony convictions that qualified as strikes under the three strikes law.

---

[1]  Undesignated statutory references are to the Penal Code.

1

(§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i).)  The court sentenced defendant to an aggregate term of 30 years to life in prison.

Defendant appeals, arguing the trial court committed prejudicial error by instructing the jury that the deadly weapon element of the charged offense could be satisfied by *either* the use of an inherently deadly weapon *or* an object that becomes a deadly weapon based on the manner it is used.  The People concede that the trial court erroneously permitted the jury to consider a knife to be an inherently dangerous weapon, but argue the error was harmless.  We agree with the People.  Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On a busy Friday night in February 2023, defendant[2] was drinking alcohol at a bar in Auburn.  When the bartender decided to "cut him off" (i.e., stop serving him alcohol), defendant became upset and threw a cup behind the bar where the bartenders were working.  A man standing next to defendant took issue with his "disrespect" and struck him twice in the face with a fist or elbow, causing him to fall to the ground.  At that moment, the bar's security guard, Paul Banks, intervened to break up the altercation.

When defendant got up from the ground, he was very angry and agitated.  He pulled out a foldable pocketknife and "click[ed]" open the blade, which was about three inches long.  In response, Banks put his hands up to show defendant that he "meant no harm" and wanted to help him in a "peaceful manner."  At the same time, Banks "frantically" directed people to back up and get away from defendant.

Meanwhile, defendant who had been yelling and displaying "aggressive body language and behavior," including "jumping around" while "waving the knife," decided to "charge" Banks.  When defendant was a few feet away from Banks, he extended his

---

[2] Defendant is approximately five foot eight inches tall.  At the time of the altercation giving rise to this case, he weighed over 200 pounds.

right arm (with the knife) and aggressively lunged at Banks in a quick and threatening manner. Banks moved backwards and defendant tripped and fell before reaching him. According to Banks, defendant's knife came within two inches of his sternum.

The altercation ended when Banks and several other people subdued defendant. Police officers arrived at the scene within minutes and took defendant into custody. Defendant, who appeared to be intoxicated, was agitated and uncooperative. His eyes were red and watery, he was unsteady on his feet, and his speech was very slow and slurred. When questioned by an officer at the scene, defendant admitted the knife belonged to him.

The altercation was captured by two surveillance cameras. The video recordings, which were described as very blurry, were admitted into evidence and played for the jury. At trial, a police officer testified that defendant's pocketknife made a "clicking" noise when the blade was opened and moved into the locked position.

As relevant to the issue on review, the People charged defendant with assault with a deadly weapon (knife) under section 245, subdivision (a)(1). The case went to a jury trial.

At the close of trial, the jury was given written and oral instructions. As to the charged offense, the trial court gave pattern instruction CALCRIM No. 875 as follows: "The defendant is charged in Count 1 with assault with a deadly weapon other than a firearm in violation of Penal Code section 245(a)(l). [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant did an act with a deadly weapon other than a firearm that by its nature would directly and probably result in the application of force to a person; [¶] 2. The defendant did that act willfully; [¶] 3. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; [¶] AND [¶] 4. When the defendant acted, he had the present ability

3

to apply force with a deadly weapon other than a firearm to a person." (CALCRIM No. 875.)

The trial court further instructed the jury: "*A deadly weapon other than a firearm* is any object, instrument, or weapon that is inherently deadly or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury. [¶] An object is *inherently deadly* if it is deadly or dangerous in the ordinary use for which it is designed." (CALCRIM No. 875.)

The jury found defendant guilty of the charged offense. This timely appeal followed.

## DISCUSSION

Defendant's sole contention on appeal is that the trial court committed prejudicial instructional error. He claims reversal is required due to "alternative-theory error," as the jury was erroneously instructed that the knife qualified as a deadly weapon under *either* the "inherently deadly theory" *or* the "as-used theory." The People concede that it was error to instruct the jury on the first theory because a knife is not an inherently deadly weapon as a matter of law, but argue the error was harmless. The People have the better argument.

I

*Applicable Legal Principles and Standard of Review*

Subdivision (a)(1) of section 245 provides: "Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment."

In *People v. Aledamat* (2019) 8 Cal.5th 1 at page 4 (*Aledamat*), the defendant used a box cutter as a weapon and was charged with assault with a deadly weapon under section 245, subdivision (a)(1). During his trial, the jury (as here) was instructed with

4

CALCRIM No. 875, which allowed it to conclude the box cutter was an inherently deadly weapon *or* was a deadly weapon as used. (*Aledamat*, at pp. 4-6.) Our Supreme Court explained: " 'As used in section 245, subdivision (a)(1), a "deadly weapon" is "any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury." [Citation.] Some few objects, such as dirks and blackjacks, have been held to be deadly weapons as a matter of law; the ordinary use for which they are designed establishes their character as such.' " (*Aledamat*, at p. 6.) But an object that can be used for innocent purposes is not among the objects that are inherently deadly weapons. These " '[o]ther objects, while not deadly per se, may be used, under certain circumstances, in a manner likely to produce death or great bodily injury. In determining whether an object not inherently deadly or dangerous is used as such, the trier of fact may consider the nature of the object, the manner in which it is used, and all other facts relevant to the issue.' " (*Ibid*.)

"Only a few items that are designed to be used as deadly weapons are inherently deadly." (*Aledamat, supra*, 8 Cal.5th at p. 8.) "Because a knife can be, and usually is, used for innocent purposes, it is not among the few [items] that are inherently deadly weapons. 'While a knife is not an inherently dangerous or deadly instrument as a matter of law, it may assume such characteristics, depending upon the manner in which it was used . . . .' " (*Id.* at p. 6.)

We review a claim of instructional error de novo. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.)

II

*Instructional Error*

As previously indicated, the jury found defendant guilty of assault with a deadly weapon (knife) under section 245, subdivision (a)(1). The court instructed the jury that a weapon could be *either* inherently deadly *or* deadly in the way defendant used it. The instruction accurately stated the law. However, as the parties agree, the court erred in

5

instructing the jury with two theories by which it could find the knife a deadly weapon: (1) inherently or (2) as used. The first theory (inherently) is incorrect, but the second theory (as used) is correct. (See *Aledamat, supra*, 8 Cal.5th at pp. 3, 6-7 [inclusion of inherently deadly weapon instruction for assault with a box cutter was erroneous since a box cutter is not a deadly weapon as a matter of law].) Thus, the question is whether the instructional error was prejudicial. As will appear, we conclude reversal is not required because the error was harmless beyond a reasonable doubt.[3]

When a jury is instructed with two theories of an offense, one of which is legally valid and one of which is legally invalid (otherwise known as "alternative-theory" error), a federal constitutional error has occurred; the defendant has been deprived of his right to a jury properly instructed in the relevant law. (*In re Lopez* (2023) 14 Cal.5th 562, 580 (*Lopez*).) " 'The reviewing court must reverse the conviction unless, after examining the entire cause, including the evidence, and considering all relevant circumstances, it determines the error was harmless beyond a reasonable doubt.' " (*Id.* at pp. 567, see also p. 580; *Aledamat, supra*, 8 Cal.5th at p. 13 [applying the beyond-a-reasonable-doubt harmless error standard established in *Chapman*]; see *Aledamat,* at p. 9 [holding that "no higher standard of review applies to alternative-theory error than applies to other misdescriptions of the elements"].) To determine harmlessness when there is alternative-theory instructional error, "a reviewing court essentially asks whether any rational juror

---

[3] In light of our conclusion, we need not and do not consider the People's alternative contention that the instructional error was harmless under the less stringent reasonable probability standard (*People v. Watson* (1956) 46 Cal.2d 818) because the error was "factual rather than legal." (See *Aledamat, supra*, 8 Cal.5th at pp. 7-8 [describing the two categories of incorrect theories, explaining that a factually inadequate theory is incorrect "only because the evidence does not support it" while a legally inadequate theory is incorrect because it is "contrary to law"].) In resolving defendant's instructional error claim, we apply the more stringent beyond-a-reasonable-doubt standard for prejudice established in *Chapman v. California* (1967) 386 U.S. 18. (See *Aledamat*, at pp. 7-9 [*Chapman* applies when the jury has been instructed on a legally incorrect theory].)

who made the findings reflected in the verdict and heard the evidence at trial could have had reasonable doubt regarding the findings necessary to convict the defendant on a valid theory." (*Lopez*, at p. 591.)

"A reviewing court must determine whether any rational jury would have found the defendant guilty based on a valid theory if the jury had been properly instructed. 'The reviewing court examines what the jury necessarily did find and asks whether it would be impossible, on the evidence, for the jury to find *that* without *also* finding the missing fact as well.' [Citation.] In other words, if ' "[n]o reasonable jury that made all of these findings could have failed to find" ' the facts necessary to support a valid theory, the alternative-theory error was harmless." (*Lopez, supra,* 14 Cal.5th at pp. 584-585; see also *Aledamat, supra,* 8 Cal.5th at pp. 9-15 [rejecting the argument that alternative-theory error could be found harmless only where "there is a basis in the record to find that 'the jury has "*actually*" relied upon the valid theory' "].) "If the reviewing court determines beyond a reasonable doubt that any rational juror would have made the additional findings, based on the jury's actual verdict and the evidence at trial, the error is harmless because the presentation of the invalid theory to the jury made no difference. The error did not contribute to the verdict." (*Lopez*, at p. 589.)

We conclude the People have met their burden to show that the "alternative-theory" instructional error was harmless beyond a reasonable doubt. (*Lopez, supra*, 14 Cal.5th at p. 585 [People have the burden to show harmless error under *Chapman*].) Here, the evidence showed that during an alcohol-fueled bar fight, defendant pulled out a pocketknife and opened the three-inch blade into a locked position. After yelling and displaying very aggressive body language, defendant charged at Banks. When defendant was a few feet away from Banks, he extended his right arm with the knife in hand and aggressively lunged at Banks in a threatening manner. Although defendant tripped and fell before he reached Banks (who was backing away), the knife came within about two inches of Bank's chest.

On this record, no rational juror could have had a reasonable doubt regarding the finding necessary to convict the defendant on the valid theory. Here, under the instructions, the jury necessarily found the following: (1) defendant did an act with a deadly weapon (either inherently or as used) that by its nature would directly and probably result in the application of force; (2) defendant was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; and (3) defendant had the present ability to apply force with a deadly weapon to a person. (See *Aledamat, supra*, 8 Cal.5th at p. 15.) Even if the jury found that the knife was an inherently deadly weapon (because it is sharp and used for cutting) as permitted by the erroneous jury instruction, we are convinced beyond a reasonable doubt that the jury would have necessarily also found that defendant used the knife in such a way that it was capable of producing and likely to produce death or great bodily injury. In other words, had the jury been properly instructed on the deadly weapon element--i.e., had the incorrect inherently deadly theory been omitted from the instruction--the jurors would necessarily have found defendant guilty of the charged offense based on a legally valid theory. No reasonable jury that made the findings in the verdict and heard the evidence at trial could have failed to make the findings necessary to convict defendant on the valid theory of the knife as a deadly weapon based on the manner in which defendant used it. (*Lopez, supra*, 14 Cal.5th at p. 589; see also *Aledamat, supra*, 8 Cal.5th at pp. 4-5, 15 [alternative-theory instructional error harmless where the defendant pulled a box cutter (not an inherently deadly weapon) out of his pocket, extended the blade, and then thrust the blade at the victim's waist from three or four feet away while saying, "I'll kill you"].) Accordingly, we find the instructional error harmless under *Chapman*.

We reach this conclusion even though the prosecutor (without objection) made an inaccurate statement about the knife during closing argument. (See *People v. Powell* (2021) 63 Cal.App.5th 689, 715 [reviewing courts also "look to the prosecutor's

8

argument as a relevant circumstance in determining whether instructional error is harmless"].)  When discussing the deadly weapon element, the prosecutor stated:  "It's a knife.  What is a knife used for?  Cutting, slicing, stabbing, dicing.  It's a knife.  Common sense.  The law tells you in reading it, as Judge just said, *that a knife by its nature is inherently deadly*."  (Italics added.)  The record reflects that the trial court never made such a statement or otherwise instructed the jury (verbally or in writing) that a knife is an inherently deadly weapon.  Instead, pursuant to CALCRIM No. 875, the court provided the jury with instructions that correctly defined the terms "deadly weapon" and "inherently deadly" weapon.  We presume the jury followed the court's instructions, including the CALCRIM No. 200 instruction, which told the jurors that they must follow the court's instructions if the attorneys' comments on the law conflicted with them.  (See *People v. Sanchez* (2001) 26 Cal.4th 834, 852 ["Jurors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions"].)

Moreover, the prosecutor made only one brief reference to the knife as an inherently deadly weapon at the outset of her closing argument--the reference we have described.  During the remainder of her argument, the prosecutor focused on the circumstances of the altercation to argue the People had met their burden of proof on the elements of the charged crime.  The prosecutor explained in detail how and why defendant's knife qualified as a deadly weapon based on the manner in which he used it.  And the uncontroverted evidence (as summarized *ante*) showed that defendant used the knife in a way that rendered it a deadly weapon for purposes of the charged offense; that is, defendant used the knife in such a way that it was capable of causing and likely to cause death or great bodily injury to Banks.  As emphasized by the prosecutor during closing argument, the elements of the charged offense were satisfied (including the deadly weapon element) because eyewitnesses (including Banks) testified that defendant intentionally ran toward and then quickly lunged at Banks while holding the knife in his

outstretched hand, the blade of which came within two inches of Banks's chest. In the prosecutor's view, defendant was guilty of the charged offense because the evidence showed that defendant lunged at Banks in an attempt to stab him. In support of her position, the prosecutor played the surveillance video of the altercation.

In response, defense counsel conceded that defendant was angry and upset after he was hit in the face and fell to the ground, and that defendant lunged at Banks after he got up from the ground. However, defense counsel noted that defendant was intoxicated and questioned whether the evidence showed that he (1) was aware of facts which would lead a reasonable person to realize that his actions by their nature would have directly and probably resulted in the application of force to someone (element three), and (2) had the present ability to apply force likely to produce great bodily injury with a deadly weapon other than a firearm (element four). After pointing out that defendant never made any verbal threats to Banks (e.g., "I'm gonna stab you"), defense counsel urged the jury to review the surveillance video and insisted that the People charged defendant with the wrong crime, claiming that (at most) defendant was guilty of brandishing a weapon. Defense counsel never discussed whether the knife was a deadly weapon, let alone argued or suggested that defendant should be found not guilty of the charged offense because the knife did not qualify as a deadly weapon (element one) under the circumstances. Instead, defense counsel questioned whether the surveillance video showed that defendant was armed with a knife when he lunged towards Banks.

In rebuttal argument, the prosecutor reminded the jury that defendant lunged at Banks with a knife, and that it was the jury's role to judge the credibility of Banks's testimony in that regard. As for the crime of brandishing a weapon, the prosecutor argued: "This ceased to be a brandishing the moment [defendant] had that knife in his hand and charged . . . Banks, the moment that the defendant lunged at . . . Banks with that knife outstretched, as [Banks] testified to." In making this argument, the prosecutor showed the jury the knife and noted that defendant charged and lunged at Banks "arm

10

outstretched, blade pointed towards . . . Banks'[s] sternum." The prosecutor concluded her remarks to the jury by stating: "The fact that [defendant], while angry, while upset, while drunk, took this knife, opened it, paced back and forth, when confronted by . . . Banks proceeded to charge at him with it outstretched pointed towards his sternum, that's assault with a deadly weapon, and that is the evidence, Ladies and Gentlemen. [Defendant] is guilty. Thank you."

We find that the prosecutor's mild and brief exacerbation of the trial court's instructional error during closing argument does not warrant reversal. The jury necessarily rejected defendant's contention that he did not assault Banks with a knife when it returned a guilty verdict. And defense counsel never argued that if defendant did assault Banks with the knife, it was not a deadly weapon for purposes of the charged offense. Indeed, the focus of this case was not whether the knife was a deadly weapon, and neither party argued that there were two separate ways to find that the knife was a deadly weapon. Here, like in *Aledamat*, although defense counsel did not concede the knife was a deadly weapon, he did not contest the point, which, in our view, would have been futile based on the record. (*Aledamat, supra*, 8 Cal.5th at p. 14 ["A box cutter is not inherently deadly because it is not *designed* for that purpose. But if used to assault someone, i.e., used as a *weapon*, a box cutter *is* potentially deadly even if not designed for that purpose"]; see *People v. Graham* (1969) 71 Cal.2d 303, 327-328 [explaining that when a sharp object "is capable of being used in a 'dangerous or deadly' manner, and it may be fairly inferred from the evidence that its possessor intended on a particular occasion to use it as a weapon should the circumstances require, we believe that its character as a 'dangerous or deadly weapon' may be thus established, at least for

11

purposes of that occasion"], overruled on another ground in *People v. Ray* (1975) 14 Cal.3d 20.)  Accordingly, we find no basis for reversal.[4]

## DISPOSITION

The judgment is affirmed.


_____/s/_____
Duarte, J.

We concur:



_____/s/_____
Hull, Acting P. J.




_____/s/_____
Robie, J.

---

[4]  Because we have addressed the merits of defendant's instructional error claim, we need not and do not consider whether he forfeited the claim by failing to object in the trial court.